UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES of AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. |
| JASON KENNETH GILLIS, ) | 12-40028-FDS |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ON APPEAL FROM**
**JUDGMENT OF CONVICTION BY MAGISTRATE JUDGE**

**SAYLOR, J.**

This is an appeal from a conviction for operating a motor vehicle under the influence of alcohol on property under the charge and control of the Veterans Administration, in violation of 38 C.F.R. 1.218(a)(7).

Jason Kenneth Gillis was convicted on April 10, 2012, after a jury trial. He contends that his conviction should be vacated for two reasons: first, he contends that his operation of the vehicle, the stop, and the arrest did not occur on federal property; and second, he contends that the magistrate judge erred in instructing the jury concerning the elements of the offense. For the reasons set forth below, the conviction will be vacated, and an order will be entered dismissing the case for lack of jurisdiction.

**I.    Background**

   **A.    Factual Background**

On July 5, 2010, at approximately 1:30 a.m., Veterans Administration ("VA") Police Officer Joseph Grassi was stationed in Parking Lot 6 of the VA Hospital campus in Bedford, Massachusetts. Through his rear-view window, Grassi observed a vehicle approaching on

Springs Road. Using a radar unit, Grassi clocked the speed of the vehicle at 42 miles per hour. The speed limit in that location is 20 miles per hour.

Grassi activated his emergency lights and sirens and pulled out behind the vehicle, which came to a stop in the travel lane. When Grassi approached, the driver, Jason Gillis, held his license and registration out the open driver's side window of the car. As Grassi took the paperwork from Gillis, he noticed the smell of alcohol. Grassi asked Gillis where he was going, and Gillis responded that he was going home from a friend's house. He also indicated that he had drunk five beers. His speech was slow and slurred. Grassi asked Gillis to step out of the car to perform a number of field sobriety tests; Gillis complied. Grassi asked Gillis if he thought he was okay to drive. Gillis replied, "I'm not trying to brag, but my friends call me a partier."

Grassi asked Gillis to perform three field sobriety tests: the "horizontal gaze nystagmus" test, the "walk and turn" test, and the "one-legged stand" test. Grassi determined that Gillis failed two out of the three tests, and concluded that he was under the influence of alcohol. Gillis was arrested and charged with operating a vehicle under the influence of alcohol on property under the charge and control of the VA, in violation of 38 C.F.R. § 1.218(a)(7).

Springs Road is a public way that runs along a north-south line through the VA campus in Bedford. The federal government originally acquired title to a portion of the campus in 1927 in order to build a VA hospital. In 1941 and 1945, the VA expanded the campus through additional acquisitions of land. The 1941 and 1945 transfers expressly excluded any "part of the fee and soil of said Spring[s] Road," even though the road cuts through the campus.[1]

---

[1] The federal government apparently owns a small portion of Springs Road, but not the part of the road on which Gillis operated his vehicle and was stopped and arrested.

Gillis was stopped on Springs Road at a point that was specifically excluded by the 1941 and 1945 acquisitions. That portion of Springs Road is nonetheless maintained, apparently exclusively, by the VA. The VA paves and maintains the road and plows it in the winter. The road is lit by VA street lighting that is distinct from the lighting used by the town of Bedford. It is also uncontroverted that the VA police department routinely patrols the road.

B.    **Procedural Background**

Gillis first appeared before the magistrate judge on September 9, 2010. On April 25, 2011, he filed a motion to dismiss the case, contending that the offense did not occur on VA property, and that as a result there was no federal jurisdiction. That motion was combined for hearing with another motion raising the same issue in a different case, *United States v. Smith*, 10-PO-10793-TSH. The magistrate judge held a hearing on both motions on July 14 and 19, 2011.

On October 11, 2011, the magistrate judge entered an order denying the motion to dismiss. The court was unable to find beyond a reasonable doubt that the VA owned the portion of Springs Road where Gillis was driving at the time that he was observed, pulled over, and arrested. However, the court found that the government did not need to prove that the VA owned the road in order for the court to have jurisdiction over the case. The court pointed to 38 C.F.R. 1.218(a), which provides that "the following rules and regulations apply to all property under the charge and control of VA." The court interpreted this language to mean that the jurisdiction of the VA extended to land under the agency's "charge and control," and not only to land that it owned.

The court further interpreted the phrase "under the charge and control" to mean "an interest in the geographical area that is not dependent upon record title so much as what custom,

history, public perception, and what the day to day running of the VA facility require." The court indicated that there was undisputed evidence that the VA maintains and polices the relevant portion of Springs Road, and that the VA campus (including the portion of Springs Road that runs through it) has its own system of street lighting and signage distinct from that used by the Town of Bedford. The court found beyond a reasonable doubt that the portion of Springs Road at issue was "under the charge and control of the VA," and that the court therefore had jurisdiction to hear the case.[2]

The case proceeded to trial before a jury on December 20 and 21, 2011. Prior to trial, the defense objected to the court's proposed jury instruction concerning the element of "under the influence of alcohol." The defendant requested that the judge instruct the jury as follows:

> The defendant is charged with operating or being in actual physical control of a vehicle while under the influence of alcohol, in violation of a federal regulation, 38 C.F.R. 1.218. The required proof for this federal offense is different from what you may have heard or read about similar offenses under state law. In order to prove the defendant guilty of this offense, the Government must prove four things beyond a reasonable doubt:
>
> First: That the defendant operated or was in actual physical control of a motor vehicle;
>
> Second: That the defendant did so on a way, under the charge and control of Veteran's Administration.
>
> Third: That while the defendant was operating the vehicle, he was under the influence of alcohol.
>
> Fourth: That he was under the influence of alcohol to a degree that rendered him incapable of safe operation.

The court rejected that request. The jury was instructed as follows:

---

[2] Gillis filed a motion for reconsideration on October 12, 2011, which was denied on October 28.

> In order to prove the defendant guilty of this offense, the government must prove three things beyond a reasonable doubt:
>
> First, that the defendant operated a motor vehicle; secondly, that he did so on a way under the charge and control of the Veterans Administration; and finally, that while the defendant was operating a motor vehicle, he was under the influence of intoxicating liquor . . . .
>
> Now, what does it mean to be under the influence of alcohol? Someone does not have to be drunk to be under the influence of alcohol. A person is under the influence if they consumed enough alcohol to reduce their ability to operate a motor vehicle safely so that alcohol has decreased his alertness, judgment, and ability to respond promptly. It means that a person has consumed enough alcohol to reduce their mental clarity, self-control, and reflexes and thereby left him with a reduced ability to drive safely.
>
> To show that a person was under the influence of alcohol, the government is not required to show that the defendant actually drove in an unsafe or erratic manner, but it is required to prove that his ability to drive safely was diminished by alcohol.

The defense made a timely objection to the instruction.

The jury returned a guilty verdict on December 21, 2011. The court sentenced Gillis to one year of probation and a fine of $500. Judgment was entered on April 10, 2012, and Gillis filed a timely notice of appeal.

**II.   Standard of Review**

The scope of this Court's review of a magistrate judge's order or judgment is "the same as in an appeal to the court of appeals from the judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

A trial court's determination on a question of jurisdiction is reviewed *de novo*. *See, e.g., United States ex. rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009). When a trial court takes evidence in connection with a motion to dismiss for want of jurisdiction, the court's factual findings are reviewed for clear error. *Id.*

A preserved objection to a trial court's refusal to give a requested jury instruction is reviewed *de novo*. *United States v. Whitney*, 524 F.3d 134, 138 (1st Cir. 2008). Refusal to give a particular instruction constitutes reversible error only if "the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case." *Id.* A trial court has considerable discretion to decide the precise manner in which it formulates its jury instructions. *United States v. Gonzalez*, 570 F.3d 16, 21 (1st Cir. 2009). A defendant has no right to insist that an instruction be worded exactly as requested. *Whitney*, 524 F.3d at 138.

### III.  Analysis

#### A.  Veterans Administration Jurisdiction over Springs Road

The magistrate judge determined that the defendant was pulled over on a portion of Springs Road that was not owned by the VA. This determination was based on substantial evidence in the record, and neither party has challenged it. Accordingly, the Court will accept as true that the defendant was stopped and arrested on property that is not owned by the federal government.

The magistrate judge found that the court could nonetheless properly exercise jurisdiction over the offense because the property at issue was "under the charge and control" of the VA. The question before this Court is whether this exercise of jurisdiction was proper.

##### 1.  Statutory and Regulatory Framework

The authority of the Veterans Administration to promulgate regulations is set forth in 38 U.S.C. § 901. In relevant part, the statute provides that the Secretary of the Department of Veterans Affairs shall "prescribe regulations to provide for the maintenance of law and order and

the protection of persons and property on Department property." 38 U.S.C. § 901(a)(1). The statute specifically defines "Department property" to mean "lands and buildings that are under the jurisdiction of the [Department of Veterans Affairs] and are not under control of the Administrator of General Services." 38 U.S.C. § 901(a)(2).

Pursuant to 38 U.S.C. § 901(a)(1), the Department of Veterans Affairs has promulgated regulations concerning security and law enforcement at VA facilities. According to the regulations themselves, they apply at "all property under the charge and control of VA (and not under the charge and control of the General Services Administration) . . . ." 38 C.F.R. § 1.218(a). Section 1.218(a)(7) provides that "[o]perating a motor vehicle on property by a person under the influence of alcoholic beverages . . . is prohibited." 38 C.F.R. § 1.218(a)(7).

### 2. Jurisdictional Analysis

Defendant does not appear to contest that the portion of Springs Road in question was under the "charge and control" of the VA, in that it was the agency's practice to maintain and patrol that portion of the road. Rather, defendant contends that the practice of exercising control over the road, in the absence of any proof of ownership, was not sufficient to confer regulatory jurisdiction over the road to the VA.

It is well-settled that an administrative agency's power to regulate is limited to the authority delegated by Congress by statute. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). If an agency undertakes an exercise of regulatory power that is beyond the scope of the authority delegated by Congress, that exercise is *ultra vires* and should be invalidated. *See, e.g., Adirondack Med. Ctr. v. Sebelius*, 891 F. Supp. 2d 36, 43 (D.D.C. 2012). Here, Congress has delegated the power to promulgate regulations that maintain law and order "on Department

property." Thus, the VA may only exercise power over land that is under its charge and control to the extent that the land in question is "on Department property," as that term is defined in the authorizing statue.

"Department property" is defined by statute to mean "lands and buildings that are under the jurisdiction of the [Department of Veterans Affairs] and are not under control of the Administrator of General Services." The statute does not define the term "jurisdiction." The Court therefore starts "with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." *United States v. Rodgers*, 466 U.S. 475 (1984). In keeping with the ordinary understanding of the term, the term "land and buildings that are under the agency's jurisdiction" refers to that territory over which the VA has been granted the legal authority to govern.

Under the statute, the VA clearly has the legal authority to govern land that it either owns or leases. Here, it is uncontested that neither the VA, nor any other federal entity, possessed any ownership interest in Springs Road.

It is also at least possible, under some circumstances, that the VA could possess legal authority over non-federal land. Presumably, this could happen in one of two ways. First, Congress could grant the VA authority to regulate conduct on non-federal land. Second, a state or municipality could place non-federal land under the agency's jurisdiction by granting the agency the authority to govern, either exclusively or concurrently with local authorities.

However, there is no evidence in the record to suggest that either of these grants of authority has taken place here. While in some circumstances Congress has the authority to regulate conduct on non-federal lands, see *United States v. Alford*, 274 U.S. 264 (1927), and to

delegate that authority to an administrative agency, there is no indication that it intended to do so here. Nor is there any evidence that the state or municipality ever provided any formal grant of jurisdiction over the road to the VA. Indeed, the portion of the road at issue in this case was explicitly excluded from the land transfers to the VA that took place in 1941 and 1945.

During the course of this litigation, the government has taken the position that the VA has essentially provided its own grant of legal authority, because the agency's continuing role in maintaining, lighting, and policing the road have brought the land under the agency's "charge and control." The magistrate judge accepted that position, stating in his decision that "[i]f the promulgators of the Code of Federal Regulations had wanted to make jurisdiction of the VA conditioned upon its 'ownership' of the property they would have simply left the words 'under the charge and control' out of the regulation. To ignore these words would assign them a status as surplusage which is contrary to legislative interpretation and the plain language of the regulation."

While the magistrate judge's interpretation of the regulations is well-reasoned and thorough, it skips a crucial step. An agency cannot confer on itself a grant of legal authority that exceeds the scope of its delegated authority. Accordingly, the threshold question must be whether Congress has delegated the authority to the VA to expand its own authority to regulate.

This Court finds nothing in the text of the authorizing statute to suggest that Congress intended to do so. Congress has authorized the VA to implement and enforce regulations in those territories over which the VA has jurisdiction; it has not authorized the VA to define its own jurisdiction. The segment of Springs Road in question here is one that, regardless of the agency's maintenance and patrolling customs, is not *legally* controlled by the VA. There is

simply no authorizing statute that provides the agency with the power to regulate activity on that segment of Springs Road. The agency's exercise of regulatory power over the relevant segment of Springs Road is thus an unauthorized expansion of the agency's delegated regulatory power.

Accordingly, the VA had no authority to enforce its regulations on the portion of Springs Road at issue in this case, and the court below had no jurisdiction to hear this case.

### B. "Under the Influence" Jury Instructions

Defendant also challenged the magistrate judge's jury instruction that defined "under the influence of alcohol" based on Massachusetts state law. Having found that there is no federal jurisdiction in this case, the Court need not, and indeed cannot, reach this challenge.

### IV. Conclusion

For the foregoing reasons, judgment against defendant shall be VACATED. The case shall be dismissed for lack of jurisdiction.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 16, 2013